1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   MARCUS HILL-COLBERT, JENNIFER          No. 2:22-cv-1651 WBS SCR
     TIMMONS, HERMINIO LeBRON, DANIEL
13   REED, VINCENT BARNAO, ERIN
     McMARLIN, and JAMES THOMPSON, on
14   behalf of themselves and a class      MEMORANDUM AND ORDER RE:
     of similarly situated persons,        PLAINTIFFS' MOTION FOR
15                                          PRELIMINARY APPROVAL OF CLASS
                                            ACTION SETTLEMENT
16              Plaintiffs,

17        v.

18   CITY OF ROSEVILLE, ROSEVILLE
     POLICE DEPARTMENT, TYLER
19   CANTLEY, and DOES 1-20,

20              Defendants.

21

22                        ----oo0oo----

23        Plaintiffs Marcus Hill-Colbert, Jennifer Timmons,

24   Herminio LeBron, Daniel Reed, Vincent Barnao, Erin McMarlin, and

25   James Thompson (collectively, "plaintiffs"), individually and on

26   behalf of a class of similarly situated individuals, brought this

27   putative class action against municipal government defendants

28

                                 1

1   City of Roseville ("the City" or "Roseville"), the Roseville

2   Police Department, Roseville Officer Tyler Cantley, and twenty

3   fictitiously named "Does" (collectively, "defendants") alleging

4   various torts and constitutional rights violations.  (See First

5   Am. Compl. ("FAC") (Docket No. 17).)  Before the court is the

6   parties' joint motion for preliminary approval of a class action

7   settlement.  (See Docket No. 40.)

8   I.   Background

9        In 2010, the City adopted Roseville Municipal Code

10  § 8.02.316, which allows officers of the Roseville Police

11  Department to exclude individuals from the City's parks for

12  violating "any applicable ordinance."  (FAC ¶¶ 19-20; see also

13  Docket No. 40-2 Ex. A (same).)  Roseville Municipal Code

14  § 8.02.020 defines a "park" as "any park, dog park, town square,

15  library, museum, stream bed area, bicycle trail, open space, or

16  other facility owned or operated by the city for park or

17  recreation purposes."  (FAC ¶ 21; see also Docket No. 40-2 Ex. B

18  (same).)  The gravamen of plaintiffs' claims is that defendants

19  enforced § 8.02.316 against "involuntarily homeless persons

20  without access to shelter," including themselves, in

21  contravention of federal and state law.  (FAC ¶ 22.)

22       Plaintiffs brought federal and state claims for

23  unconstitutional searches and seizures, false imprisonment,

24  violations of due process, cruel and unusual punishment,

25  violations of the Tom Bane Civil Rights Act, invasion of privacy,

26  intentional infliction of emotional distress, and negligence.

27  (See FAC ¶¶ 200-77.)  After extensive negotiations involving

28  former Magistrate Judge Kendall J. Newman during his time with

1 the court and after as a private mediator, the parties reached a

2 settlement involving modifications of the City's municipal code

3 and practices and payments to class members.

4    The putative class consists of "all homeless persons

5 who were excluded from a City of Roseville park facility pursuant

6 to Roseville Municipal code section 8.02.316, but not arrested at

7 the time, within two years before September 20, 2022." (Docket

8 No. 40-2 Ex. C ¶ 12.)  The parties estimate that the putative

9 class has at most 250 members.  (Docket No. 40-1 at 3.)

10    The parties propose a gross settlement fund which

11 includes the following: (1) $250 incentive awards for the seven

12 named plaintiffs, for a total of $1,750 in plaintiff incentive

13 awards; (2) a payment of $50 to $1,000 to each class member

14 depending on how long he or she was excluded from Roseville

15 parks; (3) a supplemental payment of $150 to $1,500 to each class

16 member who claims loss of property in connection with that

17 exclusion depending on the lost property's value; and (4) a

18 "reasonable amount of fees and costs incurred by class counsel to

19 handle the claims administration." (See Docket No. 40-2 Ex. C at

20 ¶¶ 43-44.)

21    The settlement would also release defendants from any

22 and all class claims that were pled or could have been pled based

23 on the factual allegations in the operative or prior complaints.

24 (See Docket No. 40-2 Ex. C at ¶¶ 30, 63.)  A hearing on the

25 instant motion for preliminary approval was set for April 14,

26 2025.  (Docket No. 40.)

27 II.  Discussion

28    Federal Rule of Civil Procedure 23(e) provides that

"the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e) (cleaned up).  This Order is the first step in that process and analyzes only whether the proposed class action settlement deserves preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.). Preliminary approval authorizes the parties to give notice to putative class members of the settlement agreement and lays the groundwork for a future fairness hearing, at which the court will hear objections to (1) the treatment of this litigation as a class action and (2) the terms of the settlement.  See id.; see also Diaz v. Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (same).  The court will reach a final determination as to whether the parties should be allowed to settle the class action on their proposed terms after that hearing.

Where the parties reach a settlement agreement prior to class certification, the court must first assess whether a class exists.  Staton v. Boeing Co., 327 F.3d 938, 952-53 (9th Cir. 2003).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Id. (cleaned up).  The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled."  Murillo, 266 F.R.D. at 473.

Consequently, the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement.  See Amchem Prods. Inc. v. Windsor, 521 U.S. 591,

1  621-22 (1997) ("Federal courts, in any case, lack authority to

2  substitute for Rule 23's certification criteria a standard never

3  adopted -- that if a settlement is 'fair,' then certification is

4  proper.").

5       "Second, the district court must carefully consider

6  'whether a proposed settlement is fundamentally fair, adequate,

7  and reasonable,' recognizing that 'it is the settlement taken as

8  a whole, rather than the individual component parts, that must be

9  examined for overall fairness . . . .'" Staton, 327 F.3d at 952

10  (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

11  1998), abrogated on other grounds by Wal-Mart Stores, Inc. v.

12  Dukes, 564 U.S. 338 (2011)) (cleaned up).

13       A.    Class Certification

14       The putative class consists of "all homeless persons

15  who were excluded from a City of Roseville park facility pursuant

16  to Roseville Municipal code section 8.02.316, but not arrested at

17  the time, within two years before September 20, 2022."  (Docket

18  No. 40-2 Ex. C ¶ 12.)  To be certified, the putative class must

19  satisfy the requirements of Federal Rules of Civil Procedure

20  23(a) and 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512

21  (9th Cir. 2013).

22       1.    Rule 23(a)

23       Rule 23(a) restricts class actions to cases where: "(1)

24  the class is so numerous that joinder of all members is

25  impracticable; (2) there are questions of law or fact common to

26  the class; (3) the claims or defenses of the representative

27  parties are typical of the claims or defenses of the class; and

28  (4) the representative parties will fairly and adequately protect

1    the interests of the class."  See Fed. R. Civ. P. 23(a).

2                    a.    Numerosity

3              "Courts have routinely found the numerosity requirement

4    satisfied when the class comprises 40 or more members."  Collins

5    v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011)

6    (Wanger, J.).  Here, the parties estimate that the proposed class

7    contains at most 250 members.  (See Docket No. 40-1 at 3.)  This

8    more than satisfies the numerosity requirement.

9                    b.    Commonality

10             Commonality requires that the class members' claims

11   "depend upon a common contention" that is "capable of classwide

12   resolution -- which means that determination of its truth or

13   falsity will resolve an issue that is central to the validity of

14   each one of the claims in one stroke."  Wal-Mart Stores, 564 U.S.

15   at 350.  "All questions of fact and law need not be common to

16   satisfy the rule.  The existence of shared legal issues with

17   divergent factual predicates is sufficient, as is a common core

18   of salient facts coupled with disparate legal remedies within the

19   class."  Hanlon, 150 F.3d at 1019-20.  "So long as there is 'even

20   a single common question,' a would-be class can satisfy the

21   commonality requirement of Rule 23(a)(2)."  Wang v. Chinese Daily

22   News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart

23   Stores, 564 U.S. at 358-59).

24             Here, the claims implicate common questions of law and

25   fact because they are premised on policies and practices that

26   allegedly applied to all class members equally.  All class

27   members were "homeless persons who were excluded from a City of

28   Roseville park facility pursuant to Roseville Municipal code

1    section 8.02.316, but not arrested at the time, within two years

2    before September 20, 2022." (Docket No. 40-2 Ex. C ¶ 12.)  As a

3    result, the class members share several common factual questions

4    surrounding the circumstances of their exclusions from Roseville

5    parks as well as several common legal questions concerning

6    whether said policies and practices violated federal and

7    California law.

8         Generally, "challenging a policy common to the class as

9    a whole creates a common question whose answer is apt to drive

10   the resolution of the litigation." Ontiveros v. Zamora,

11   No. 2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July

12   7, 2014) (cleaned up).  Even if individual members of the class

13   will be entitled to different amounts of damages because, for

14   instance, they were excluded from Roseville parks for different

15   periods of time or lost different kinds of property after being

16   excluded, "the presence of individual damages cannot, by itself,

17   defeat class certification." Leyva, 716 F.3d at 514.

18   Accordingly, these common questions of law and fact satisfy the

19   commonality requirement.

20              c.    Typicality

21        Typicality requires that named plaintiffs have claims

22   "reasonably co-extensive with those of absent class members," but

23   their claims do not have to be "substantially identical."

24   Hanlon, 150 F.3d at 1019-20.  The test for typicality "is whether

25   other members have the same or similar injury, whether the action

26   is based on conduct which is not unique to the named plaintiffs,

27   and whether other class members have been injured by the same

28   course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497,

7

1    508 (9th Cir. 1992).

2          Plaintiffs and other class members are all homeless

3    persons who were allegedly subject to the same policies and

4    practices in question, including exclusion from Roseville parks

5    and loss of property in connection with that exclusion.  Although

6    the facts might differ for individual class members, the basis

7    for their alleged injuries and the parties purportedly

8    responsible for those injuries are the same.  The proposed class

9    therefore meets the typicality requirement.

10                    d.    Adequacy of Representation

11          To resolve the question of adequacy, the court must

12   consider two factors: (1) whether the named plaintiffs and their

13   counsel have any conflicts of interest with other class members,

14   and (2) whether the named plaintiffs and their counsel will

15   vigorously prosecute the action on behalf of the class.  In re

16   Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 566-67 (9th Cir.

17   2019).

18                      i.   Conflicts of Interest

19          There do not appear to be any conflicts of interest for

20   purposes of preliminary approval.  (See Docket No. 40-2 at ¶¶ 9-

21   10.)  The named plaintiffs' interests are generally aligned with

22   those of the putative class members, who suffered injuries

23   similar to those suffered by the named plaintiffs.  See Amchem,

24   521 U.S. at 625-26.

25          The settlement provides for $250 incentive awards for

26   the named plaintiffs.  (See Docket No. 40-2 Ex. C at ¶¶ 43-44.)

27   While the provision of an incentive award raises the possibility

28   that the named plaintiffs' interest in receiving that award will

1  cause their interests to diverge from the class's interest in a
2  fair settlement, the Ninth Circuit has specifically approved the
3  award of "reasonable incentive payments." Staton, 327 F.3d at
4  977-78.  The court, however, must "scrutinize carefully the
5  awards so that they do not undermine the adequacy of the class
6  representatives." Radcliffe v. Experian Info. Sys., Inc., 715
7  F.3d 1157, 1163 (9th Cir. 2013).

8      Incentive awards "are intended to compensate class
9  representatives for work done on behalf of the class," and "to
10 make up for financial or reputational risk undertaken in bringing
11 the action." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59
12 (9th Cir. 2009).  Indeed, the Ninth Circuit has consistently
13 recognized incentive awards are "fairly typical." Id.  In
14 particular, courts have found that even "a $5,000 incentive award
15 is 'presumptively reasonable' in the Ninth Circuit." See Roe v.
16 Frito-Lay, Inc., No. 14-cv-00751, 2017 WL 1315626, at *7-8 (N.D.
17 Cal. Apr. 7, 2017) (quoting Smith v. Am. Greetings Corp., No. 14-
18 cv-02577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016)).

19     Here, the incentive awards are $250, placing them well
20 below the upper limit typically deemed reasonable within the
21 Ninth Circuit.  Moreover, plaintiffs' counsel represents that
22 named plaintiffs have expended significant time participating in
23 this case.  (See Docket No. 40-2 at ¶¶ 6-8.)  The incentive
24 payments thus appear appropriate at this stage.  However, counsel
25 should present further evidence of named plaintiffs' efforts
26 towards receiving incentive awards at final approval.

27          ii.  Vigorous Prosecution
28     The second portion of the adequacy inquiry examines the

9

1    vigor with which the named plaintiffs and their counsel have

2    pursued the class claims.  "Although there are no fixed standards

3    by which 'vigor' can be assayed, considerations include

4    competency of counsel and, in the context of a settlement-only

5    class, an assessment of the rationale for not pursuing further

6    litigation."  <u>Hanlon</u>, 150 F.3d at 1021.

7            Here, plaintiffs' counsel appear to be experienced

8    civil rights litigators with class action experience which

9    qualifies them to pursue the interests of the class.  (<u>See</u> Docket

10   No. 40-2 at ¶¶ 11-34.)  This background, coupled with the work

11   performed thus far, suggest that plaintiffs' counsel are well-

12   equipped to handle this case.  (<u>See</u> <u>id.</u> at ¶¶ 4-8.)  Further,

13   plaintiffs' counsel appear to have conducted thorough factual

14   investigation and legal research, and fully considered the

15   strengths and weaknesses of this case in deciding to accept the

16   terms of the proposed settlement agreement.  (<u>See</u> <u>id.</u> at ¶¶ 4-

17   10.)  The court finds no reason to doubt that plaintiffs' counsel

18   is well qualified to conduct the proposed litigation and assess

19   the value of the settlement.  Accordingly, the court concludes

20   that Rule 23(a)'s adequacy requirement is satisfied for the

21   purpose of preliminary approval.

22              2.    Rule 23(b)

23            After fulfilling the threshold requirements of Rule

24   23(a), the proposed class must satisfy the requirements of one of

25   the three subdivisions of Rule 23(b).  <u>Leyva</u>, 716 F.3d at 512.

26   Plaintiffs seek class certification under Rule 23(b)(3), which

27   provides that a class action may be maintained only if (1) "the

28   court finds that questions of law or fact common to class members

1   predominate over questions affecting only individual members" and

2   (2) "that a class action is superior to other available methods

3   for fairly and efficiently adjudicating the controversy." Fed.

4   R. Civ. P. 23(b)(3).[1]

5              a.   <u>Predominance</u>

6         "The predominance analysis under Rule 23(b)(3) focuses

7   on 'the relationship between the common and individual issues' in

8   the case and 'tests whether proposed classes are sufficiently

9   cohesive to warrant adjudication by representation.'" <u>Wang</u>, 737

10  F.3d at 545 (quoting <u>Hanlon</u>, 150 F.3d at 1022).

11        Here, the claims brought by the proposed settlement

12  class all arise from defendants' same conduct with respect to

13  policies of exclusion from Roseville parks.  The class claims

14  thus demonstrate a "common nucleus of facts and potential legal

15  remedies" that can properly be resolved "in a single

16  adjudication." <u>See Hanlon</u>, 150 F.3d at 1022-23.  Although there

17  are differences in the facts pertaining to individual class

18  members and the amount of injury sustained, such as how long each

19  was excluded from Roseville parks and what property they may have

20  lost in the process, there is no indication that those variations

21  are "sufficiently substantive to predominate over the shared

22  claims." <u>See</u> <u>Murillo</u>, 266 F.R.D. at 476-77 (quoting <u>Hanlon</u>, 150

23  F.3d at 1022-23).  Accordingly, the court finds common questions

24  of law and fact predominate over questions affecting only

25  _____

26        [1]    Plaintiffs also seek class certification under Rule
    23(b)(2) for declaratory and injunctive relief.  (<u>See</u> Docket No.
27  40-1 at 12 (quoting Fed. R. Civ. P. 23(b)(2)).  However, the
    court does not reach the issue since it will certify the
28  settlement class under Rule 23(b)(3) instead.

1  individual class members.

2              b.   <u>Superiority</u>

3          Rule 23(b)(3) sets forth four non-exhaustive factors

4  that courts should consider when examining whether "a class

5  action is superior to other available methods for fairly and

6  efficiently adjudicating the controversy."  Fed. R. Civ. P.

7  23(b)(3).  They are:  "(A) the class members' interests in

8  individually controlling the prosecution or defense of separate

9  actions; (B) the extent and nature of any litigation concerning

10  the controversy already begun by or against class members; (C)

11  the desirability or undesirability of concentrating the

12  litigation of the claims in the particular forum; and (D) the

13  likely difficulties in managing a class action."  <u>Id.</u>  The

14  parties settled this action prior to certification, making

15  factors (C) and (D) inapplicable.  <u>See</u> <u>Murillo</u>, 266 F.R.D. at

16  477.

17          Rule 23(b)(3) is concerned with the "vindication of the

18  rights of groups of people who individually would be without

19  effective strength to bring their opponents into court."  <u>Amchem</u>,

20  521 U.S. at 616-17.  When, as here, class members' individual

21  recovery is relatively modest, the class members' interests

22  generally favor certification.  <u>Zinser v. Accufix Res. Inst.,</u>

23  <u>Inc.</u>, 253 F.3d 1180, 1190-91 (9th Cir. 2001).  Further, most if

24  not all class members appear to be indigent and without the means

25  to bring lawsuits on their own.  <u>See</u> <u>Kincaid v. City of Fresno</u>,

26  244 F.R.D. 597, 606-07 (E.D. Cal. 2007) (Wanger, J.).

27  Accordingly, the class action device appears to be the superior

28  method for adjudicating this controversy.

1                3.   Rule 23(c)(2) Notice Requirements

2         If the court certifies a class under Rule 23(b)(3), it

3 "must direct to class members the best notice that is practicable

4 under the circumstances, including individual notice to all

5 members who can be identified through reasonable effort." Fed.

6 R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and

7 content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D.

8 651, 657-58 (N.D. Cal. 1997) (citing Eisen v. Carlisle &

9 Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice

10 must be "reasonably certain to inform the absent members of the

11 plaintiff class," actual notice is not required. Silber v.

12 Mabon, 18 F.3d 1449, 1454-55 (9th Cir. 1994).

13         Parties' counsel has provided the court with a proposed

14 notice to class members. (See Docket No. 40-2 Ex. C Attach. 2.)

15 It explains the proceedings, defines the scope of the class, and

16 explains what the settlement provides and how much each class

17 member can expect to receive in compensation. (See id. at 1-3.)

18 The notice further explains the opt-out procedure, the procedure

19 for objecting to the settlement, and the date and location of the

20 final approval hearing. (See id. at 4-6.)

21          The content of the proposed notice therefore satisfies

22 Rule 23(c)(2)(B). See Churchill Vill., L.L.C. v. Gen. Elec., 361

23 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

24 'generally describes the terms of the settlement in sufficient

25 detail to alert those with adverse viewpoints to investigate and

26 to come forward and be heard.'" (quoting Mendoza v. Tucson Sch.

27 Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980), abrogated on

28 other grounds by Evans v. Jeff D., 475 U.S. 717, 725-26 n.10

1  (1986))).

2        As for how notice will be provided to class members,

3  the parties provide that "the class notice and claim form will be

4  mailed, posted, or personally delivered to potential class member

5  at the last known address or at service providers at which class

6  members traditionally receive service."  (Docket No. 40-1 at 8

7  (cleaned up).)  Of course, because plaintiffs are homeless, they

8  may lack mailing addresses.  As a result, the court cautions that

9  a notice sent via conventional means, such as mail, is unlikely

10  to suffice.  See Roes 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

11  1045-46 (9th Cir. 2019).  The court thus advises that class

12  counsel undertake additional measures "reasonably calculated,

13  under all the circumstances," to apprise all class members of the

14  proposed settlement.  See id. at 1046-47.

15        Given these considerations, the court will grant the

16  parties' notice plan preliminary approval, notwithstanding its

17  concerns about the parties' notice plan as set forth in the

18  motion for preliminary approval.

19        B.    Preliminary Settlement Approval

20        After determining that the proposed class satisfies the

21  requirements of Rule 23(a) and (b), the court must determine

22  whether the terms of the parties' settlement appear "fair,

23  adequate, and reasonable."  See Hanlon, 150 F.3d at 1025-26

24  (citing Fed. R. Civ. P. 23(e)(2)).  This process requires the

25  court to "balance a number of factors," including "the strength

26  of the plaintiffs' case; the risk, expense, complexity, and

27  likely duration of further litigation; the risk of maintaining

28  class action status throughout the trial; the amount offered in

14

settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Id. at 1026 (cleaned up).

Because some of these factors cannot be considered until the final fairness hearing, at the preliminary approval stage, "the court need only determine whether the proposed settlement is within the range of possible approval." See Murillo, 266 F.R.D. at 479. In other words, the court must resolve any "glaring deficiencies" in the settlement agreement before authorizing notice to class members. See Ontiveros, 2014 WL 3057506, at *11-12. This analysis requires consideration of "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." Murillo, 266 F.R.D. at 479. Courts often begin by examining the process that led to the settlement's terms to ensure that those terms are "the result of vigorous, arms-length bargaining" and then turn to the substantive terms of the agreement. See id. at 479-80.

1.    Negotiation of the Settlement Agreement

On September 20, 2022, plaintiffs initiated this action and moved for a preliminary injunction. (See Docket Nos. 1, 4.) On November 1, 2022, the court denied plaintiffs' motion for a preliminary injunction. (Docket No. 16.) Plaintiffs amended the complaint the next day. (Docket No. 17.) On July 20, 2023, the parties stipulated to a settlement conference, which the court

1   approved within a day. (See Docket Nos. 24-25.)  The parties

2   thereafter engaged in months of settlement discussions as well as

3   "extensive investigation and discovery" from August 29, 2023 to

4   January 6, 2025.  (See Docket No. 40-2 at ¶¶ 5-8; see also Docket

5   No. 40-1 at 6.)  Counsel represents that the parties engaged in

6   thorough informal discovery and discussion during and prior to

7   settlement negotiations, which were adversarial and conducted at

8   arms-length.  (See Docket No. 40-1 at 6.)

9          Given the parties' representation that the settlement

10  reached was the product of arms-length bargaining following

11  thorough informal discovery, the court at this stage does not

12  question that the proposed settlement is the result of informed

13  and non-collusive negotiations between the parties.  See La Fleur

14  v. Med. Mgmt. Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at

15  *4-5 (C.D. Cal. June 25, 2014).

16              2.   Amount Recovered and Distribution

17          In determining whether a settlement agreement is

18  substantively fair to the class, the court must balance the value

19  of expected recovery against the value of the settlement offer.

20  See Ontiveros, 2014 WL 3057506, at *14.  This inquiry may involve

21  consideration of the uncertainty class members would face if the

22  case were litigated to trial.

23          "In determining whether the amount offered in

24  settlement is fair, the Ninth Circuit has suggested that the

25  Court compare the settlement amount to the parties' 'estimates of

26  the maximum amount of damages recoverable in a successful

27  litigation.'"  Litty v. Merrill Lynch & Co., No. CV 14-0425, 2015

28  WL 4698475, at *8-9 (C.D. Cal. Apr. 27, 2015) (quoting Glass v.

1  UBS Fin. Servs., Inc., No. C-06-4068, 2007 WL 221862, at *4 (N.D.

2  Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452, 455-56 (9th Cir.

3  2009)).

4          The parties have not yet proposed a gross settlement

5  amount.  However, they have proposed a settlement fund which

6  includes the following: (1) $250 incentive awards for the seven

7  named plaintiffs, for a total of $1,750 in plaintiff incentive

8  awards; (2) a payment of $50 to $1,000 to each class member

9  depending on how long he or she was excluded from Roseville

10 parks; (3) a supplemental payment of $150 to $1,500 to each class

11 member who claims loss of property in connection with that

12 exclusion depending on the lost property's value; and (4) a

13 "reasonable amount of fees and costs incurred by class counsel to

14 handle the claims administration."  (See Docket No. 40-2 Ex. C at

15 ¶¶ 43-44.)

16         Plaintiffs faced numerous risks in the litigation,

17 including proving all elements of the claims, obtaining and

18 maintaining class certification, establishing liability, and the

19 costliness of litigation on these issues.  Among other things,

20 after the Supreme Court decided City of Grants Pass v. Johnson,

21 603 U.S. 520 (2024), the strength of plaintiffs' position came

22 into question.  In Grants Pass, the Court held that a state or

23 local government may criminalize "camping . . . for the purpose

24 of maintaining a temporary place to live" without violating the

25 Eighth Amendment's prohibition against cruel and unusual

26 punishment.  603 U.S. at 537-38, 560-61.

27         The parties appeared to read Grants Pass, 603 U.S. 520,

28 to have weakened plaintiffs' federal constitutional claims.

1   Thus, plaintiffs' counsel represents that the settlement and

2   resulting distribution "potentially benefits a substantial number

3   of person who, were it not for the settlement, would likely have

4   received no compensation whatsoever."  (See Docket No. 40-2 at

5   ¶ 8.)

6        In light of the risks associated with further

7   litigation and the relative strength of defendants' arguments and

8   defenses, the court finds that the projected value of the

9   settlement is within the range of possible approval such that

10  preliminary approval of the settlement is appropriate.  The court

11  further finds the method of determining the amount of recovery

12  for each class member claims to be adequate, as each class

13  member's individual share of the settlement is proportional to

14  the amount of time excluded from Roseville parks and property

15  lost in connection with such exclusion.

16        Counsel are cautioned that because this settlement was

17  reached prior to class certification, it will be subject to

18  heightened scrutiny for purposes of final approval.  See In re

19  Apple Inc. Device Performance Litig., 50 F.4th 769, 782-83 (9th

20  Cir. 2022).  The recommendations of plaintiffs' counsel will not

21  be given a presumption of reasonableness, but rather will be

22  subject to close review.  See id.  The court will particularly

23  scrutinize "any subtle signs that class counsel have allowed

24  pursuit of their own self-interests to infect the negotiations."

25  See id.

26        3.   Attorneys' Fees

27        If a negotiated class action settlement includes an

28  award of attorneys' fees, that fee award "must be evaluated in

the overall context of the settlement." Monterrubio v. Best Buy
Stores, L.P., 291 F.R.D. 443, 455-56 (E.D. Cal. 2013) (England,
J.). "Courts have an independent obligation to ensure that the
award, like the settlement itself, is reasonable, even if the
parties have already agreed to an amount." In re Bluetooth
Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011)
(cleaned up). If the court does not approve the fee award in
whole or in part, that will not prevent the settlement agreement
from becoming effective or be grounds for termination.

In deciding the attorneys' fees motion, the court will
have the opportunity to assess whether the requested fee award is
reasonable by multiplying a reasonable hourly rate by the number
of hours counsel reasonably expended. See In re Bluetooth
Headset, 654 F.3d at 941-42. As part of this lodestar
calculation, the court may consider factors such as the "level of
success" or "results obtained" by plaintiffs' counsel. See id.
If the court, in ruling on the fees motion, finds that the amount
of the settlement warrants a fee award at a rate lower than what
plaintiffs' counsel requests, then it will reduce the award
accordingly. The court will therefore not evaluate the fee award
at length here in considering whether the settlement is adequate.

IT IS THEREFORE ORDERED that the parties' joint motion
for preliminary certification of a settlement class and
preliminary approval of the class action settlement (Docket
No. 40) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) The court provisionally certifies the action to
proceed as a class action for settlement purposes only pursuant

19

1    to Federal Rule of Civil Procedure 23, with the settlement class

2    defined as follows:

3            (a) All homeless persons who were excluded from a City

4    of Roseville park facility pursuant to Roseville Municipal Code

5    section 8.02.316, but not arrested at the time, within two years

6    before September 20, 2022, and who shall be sent or otherwise

7    notified of the class notice and claim form in the manner

8    approved of and ordered by the court according to the settlement.

9            (2) The court approves the class notice (Docket No. 40-

10   2 Ex. C Attach. 2) and claim form (Docket No. 40-2 Ex. C Attach.

11   3) and further approves the method by which notice is proposed in

12   the settlement agreement (Docket No. 40-2 Ex. C at 9) to be given

13   to the settlement class.  The class notice and claim form shall

14   be distributed to the class pursuant to the notice provisions in

15   the settlement agreement.

16           (3) The court approves the procedure set forth in the

17   settlement agreement and reflected in the class notice, with

18   which settlement class members must comply in order validly to

19   object to the settlement or to exclude themselves from the

20   settlement.  (See Docket No. 40-2 Ex. C at 12-13.)

21           (a) Any settlement class member who did not elect to be

22   excluded from the settlement by submitting a request to be

23   excluded by the objection/exclusion deadline may, but need not,

24   submit objections to the proposed settlement by filing and

25   serving an objection to the settlement by the objection/exclusion

26   deadline.

27           (b) Any settlement class member who did not elect to be

28   excluded from the settlement by submitting a request to be

20

excluded by the objection/exclusion deadline may, but need not, enter an appearance in this action through his or her own attorney.  Settlement class members who do not enter an appearance through their own attorneys will be represented by class counsel.

(4) The court appoints named plaintiffs Marcus Hill-Colbert, Jennifer Timmons, Herminio LeBron, Daniel Reed, Vincent Barnao, Erin McMarlin, and James Thompson as the representative plaintiffs of the settlement class for settlement purposes only, subject to final approval.

(5) The court appoints Mark E. Merin, Paul H. Masuhara, and Paul W. Comiskey to serve as class counsel for settlement purposes only, subject to final approval.

(6) A final approval hearing is scheduled to be held before this court on **July 21, 2025, at 1:30 p.m.**, in Courtroom 5 on the 14th floor of the Robert T. Matsui U.S. Courthouse, located at 501 I Street, Sacramento, California 95814, before the undersigned, to consider the fairness, reasonableness, and adequacy of the proposed settlement; the dismissal, with prejudice, of the instant action against the City of Roseville, the Roseville Police Department, Roseville Officer Tyler Cantley, and Does 1 through 20; and the entry of an order dismissing the defendants in the instant action.  Class counsel's application for an award of attorneys' fees and costs shall be heard at the time of the final approval hearing.

(a) The date, time and location of the final approval hearing shall be set forth in the class notice, but the final approval hearing shall be subject to cancellation or continuation

1  by the court, including in the event the court elects to decide

2  the motion for final approval without a hearing subject to Local

3  Rule 230(g), without further notice to the class other than any

4  notice that the court may issue pursuant to its regular

5  procedures.

6         (b) Only settlement class members who have filed and

7  served timely objections shall be entitled to be heard at the

8  final approval hearing.  Any settlement class member who does not

9  timely file and serve an objection to the settlement shall be

10  deemed to have waived any such objection by appeal, collateral

11  attack, or otherwise.

12         (c) All settlement class members who do not seek to be

13  excluded from the settlement by submitting a request for

14  exclusion by the objection/exclusion deadline are enjoined from

15  proceeding against defendants, including their present or former

16  elective and/or appointive boards, agents, servants, employees,

17  consultants, departments, commissioners, attorneys, officials and

18  officers, and all other individuals and entities, whether named

19  or unnamed in the instant action, as to the claims asserted.

20      (d) Notwithstanding anything herein to the contrary, the

21  court reserves decision on final approval of the settlement

22  pending the final approval hearing, including consideration of

23  any objections to the settlement, and also reserves decision on

24  the final fee and expense award, and the incentive payments for

25  the representative plaintiffs.

26      (7) This action is hereby STAYED pending final approval,

27  except for any activities set forth in the settlement agreement.

28  (See Docket No. 40-2 Ex. C.)

1        (8) In the event the settlement is not finally and fully

2    approved through entry of an order of dismissal of the instant

3    action against defendants which becomes final as of the effective

4    date, and/or if the settlement is not otherwise fully and finally

5    consummated, pursuant to the terms of the settlement agreement

6    (Docket No. 40-2 Ex. C), this order granting preliminary approval

7    of the settlement agreement shall be deemed void ab initio and

8    the parties shall be deemed to have reserved all of their

9    respective rights, legal positions, and arguments as of the day

10   before entry of this order granting preliminary approval, and the

11   parties may continue with any litigation, mediation, or

12   settlement that they choose.

13   Dated:  April 14, 2025

14   WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28