UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARCUS HILL-COLBERT, JENNIFER TIMMONS, HERMINIO LeBRON, DANIEL REED, VINCENT BARNAO, ERIN McMARLIN, and JAMES THOMPSON, on behalf of themselves and a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ROSEVILLE, ROSEVILLE POLICE DEPARTMENT, TYLER CANTLEY, and DOES 1-20,<br><br>Defendants. | No. 2:22-cv-1651 WBS DB<br><br>MEMORANDUM AND ORDER RE: <u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND MOTION FOR ATTORNEYS' FEES AND COSTS</u> |

----oo0oo----

Plaintiffs Marcus Hill-Colbert, Jennifer Timmons, Herminio LeBron, Daniel Reed, Vincent Barnao, Erin McMarlin, and James Thompson (collectively, "plaintiffs"), individually and on behalf of a class of similarly situated individuals, brought this putative class action against municipal government defendants City of Roseville ("the City" or "Roseville"), the Roseville

1

1  Police Department, Roseville Officer Tyler Cantley, and twenty
2  fictitiously named "Does" (collectively, "defendants") alleging
3  various torts and constitutional rights violations.  (See First
4  Am. Compl. ("FAC") (Docket No. 17).)  This court granted
5  plaintiffs' motion for preliminary approval of a class action
6  settlement.  (Order Granting Prelim. Approval.)  Plaintiffs now
7  move for final approval.  (See Docket No. 45.)
8        The Ninth Circuit has declared a strong judicial policy
9  favoring settlement of class actions.  Class Plaintiffs v. City
10 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also
11 Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)
12 ("We put a good deal of stock in the product of an arms-length,
13 non-collusive, negotiated resolution[.]") (citation omitted).
14 Federal Rule of Civil Procedure 23(e) provides that "[t]he
15 claims, issues, or defenses of a certified class may be settled
16 . . . only with the court's approval."  Fed. R. Civ. P. 23(e).
17        "Approval under 23(e) involves a two-step process in
18 which the Court first determines whether a proposed class action
19 settlement deserves preliminary approval and then, after notice
20 is given to class members, whether final approval is warranted."
21 Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,
22 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),
23 § 30.41 (1995)).  This court satisfied step one by granting
24 plaintiffs' unopposed motion for preliminary approval of class
25 action settlement on April 15, 2025.  (Docket No. 42.)  Now,
26 following notice to the class members, the court will consider
27 whether final approval is merited by evaluating: (1) the
28 treatment of this litigation as a class action and (2) the terms

of the settlement.  See Diaz v. Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).

I. Class Certification

The putative class consists of "all homeless persons who were excluded from a City of Roseville park facility pursuant to Roseville Municipal code section 8.02.316, but not arrested at the time, within two years before September 20, 2022."  (Docket No. 40-2 Ex. C ¶ 12.)  Class counsel received 48 claim forms after the Notice of Settlement was distributed.  (Docket No. 45-1 at 3.)

To be certified, the putative class must satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

A. Rule 23(a)

Rule 23(a) restricts class actions to cases where: "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation]."  See Fed. R. Civ. P. 23(a).

In the court's order granting preliminary approval of the settlement, the court found that the putative class satisfied the Rule 23(a) requirements.  (See Order Granting Prelim. Approval at 6-12.)  As to numerosity, typicality, and commonality, the court is unaware of any changes that would affect its conclusion that the putative class satisfies the Rule

3

23(a) requirements, and the parties have not indicated that they are aware of any such developments.

As to adequacy of representation, the court previously found no conflicts of interest, as the named plaintiffs' interests are generally aligned with those of the putative class members, who suffered injuries similar to those suffered by the named plaintiffs. (Order Granting Prelim. Approval at 8.) However, plaintiffs were asked to "present further evidence of named plaintiffs' efforts toward receiving incentive awards at final approval." (Id. at 9.) As discussed in greater detail below, the court finds the incentive awards are reasonable and do not render the class representatives inadequate.

Accordingly, the court finds that the class definition proposed by plaintiffs meets the requirements of Rule 23(a).

B.  Rule 23(b)

After fulfilling the threshold requirements of Rule 23(a), the proposed class must satisfy the requirements of one of the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512. Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its order granting preliminary approval of the settlement, the court found that both the predominance and superiority prerequisites of Rule 23(b)(3) were satisfied.

4

1  (Order Granting Prelim. Approval at 11-12.)  The court is unaware
2  of any changes that would affect its conclusion that Rule
3  23(b)(3) is satisfied.  Because the settlement class satisfies
4  both Rule 23(a) and 23(b)(3), the court will grant final class
5  certification of this action.
6        C.   Rule 23(c)(2) Notice Requirements
7             If the court certifies a class under Rule 23(b)(3), it
8  "must direct to class members the best notice that is practicable
9  under the circumstances, including individual notice to all
10 members who can be identified through reasonable effort."  Fed.
11 R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and
12 content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.
13 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,
14 417 U.S. 156, 172-77 (1974)).  Although that notice must be
15 "reasonably certain to inform the absent members of the plaintiff
16 class," actual notice is not required.  Silber v. Mabon, 18 F.3d
17 1449, 1454 (9th Cir. 1994) (citation omitted).
18            The notice explains the proceedings, defines the scope
19 of the class, and explains what the settlement provides and how
20 much each class member can expect to receive in compensation.
21 (See Docket No. 45-3 Ex. B.)  The notice further explains the
22 opt-out procedure, the procedure for objecting to the settlement,
23 and the date and location of the final approval hearing.  (See
24 id.)  The content of the notice therefore satisfies Rule
25 23(c)(2)(B).  See Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill.,
26 L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice
27 is satisfactory if it 'generally describes the terms of the
28 settlement in sufficient detail to alert those with adverse

5

viewpoints to investigate and to come forward and be heard.'"") (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

In its preliminary approval order, this court cautioned that "because plaintiffs are homeless . . . a notice sent via conventional means, such as mail, is unlikely to suffice." (See Order Granting Prelim. Approval at 14 (citing Roes 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045-46 (9th Cir. 2019).) Counsel was thus advised to undertake additional measures to apprise all class members of the proposed settlement. (See id.)

Counsel attempted to notify class members in a variety of ways. (See Docket No. 46 at 4.) Counsel posted notices in front of their office and at places frequented by the homeless; they placed a table outside their office with supplies for completing class participation forms; they contacted many homeless people face-to-face in parks, churches, pantry locations, and any other areas they reasoned the homeless would likely be found; and they hired homeless individuals to distribute informational flyers. (See id. at 4-5.)

The court appreciates the thorough efforts taken by the parties to effectuate notice and is satisfied that the notice procedure was "reasonably calculated, under all the circumstances," to apprise all class members of the proposed settlement. See Roes, 944 F.3d at 1045–46.

II. Final Settlement Approval

Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R.

6

Civ. P. 23(e)(2).  To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires the court to consider four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other."  Id.  The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

    A.   Adequate Representation

        The court must first consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson v. Libre Tech., Inc., No. 3:18-cv-1371 GPC KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting 4 Newberg on Class Actions § 13:48 (5th ed.)); see also In re GSE Bonds Antitr. Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiries under Rule 23(a)(4) and Rule 23(e)(2)(A)).

        Because the Court has found that the proposed class

7

satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson, 2020 WL 2467060, at *5.

    B.    Negotiation of the Settlement Agreement

        On September 20, 2022, plaintiffs initiated this action and moved for a preliminary injunction.  (See Docket Nos. 1, 4.)  On November 1, 2022, the court denied plaintiffs' motion for a preliminary injunction.  (Docket No. 16.)  Plaintiffs amended the complaint the next day.  (Docket No. 17.)  On July 20, 2023, the parties stipulated to a settlement conference, which the court approved within a day. (See Docket Nos. 24-25.)  Counsel represents that the parties thereafter engaged in months of settlement discussions as well as "extensive investigation and discovery" from August 29, 2023 to January 6, 2025.  (See Docket No. 40-2 at ¶¶ 5-8; see also Docket No. 40-1 at 6.)  Counsel further represents that the parties engaged in thorough informal discovery and discussion during and prior to settlement negotiations, which were adversarial and conducted at arms-length.  (See Docket No. 40-1 at 6.)

        Given the parties' representation that the settlement reached was the product of arms-length bargaining following thorough informal discovery, the court does not question that the proposed settlement is the result of informed and non-collusive negotiations between the parties.  See La Fleur v. Med. Mgmt. Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at *4-5 (C.D. Cal. June 25, 2014).

    C.    Adequate Relief

        In determining whether a settlement agreement provides

8

1   adequate relief for the class, the court must "take into account
2   (i) the costs, risks, and delay of trial and appeal; (ii) the
3   effectiveness of any proposed method of distributing relief to
4   the class, including the method of processing class-member
5   claims; (iii) the terms of any proposed award of attorney's fees,
6   including timing of payment; and (iv) any [other] agreement[s]"
7   made in connection with the proposal.  See Fed. R. Civ. P.
8   23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-
9   AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).
10           The court notes that, in evaluating whether the
11  settlement provides adequate relief, it must consider several of
12  the same factors outlined in Hanlon, including the strength of
13  the plaintiffs' case; the risk, expense, complexity, and likely
14  duration of further litigation; the risk of maintaining class
15  action status throughout the trial; and the amount offered in
16  settlement.  See Hanlon, 150 F.3d at 1026.
17           In determining whether a settlement agreement is
18  substantively fair to class members, the court must balance the
19  value of expected recovery against the value of the settlement
20  offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d
21  1078, 1080 (N.D. Cal. 2007).  When a settlement was reached prior
22  to class certification, it is subject to heightened scrutiny for
23  purposes of final approval.  See In re Apple Inc., 50 F.4th at
24  782.  The recommendations of plaintiffs' counsel will not be
25  given a presumption of reasonableness, but rather will be subject
26  to close review.  See id. at 782-83.  The court will particularly
27  scrutinize "any subtle signs that class counsel have allowed
28  pursuit of their own self-interests to infect the negotiations."

1  See id. at 782 (quoting Roes, 944 F.3d at 1043).

2        The parties proposed a settlement which includes the
3  following: (1) $250 incentive awards for the seven named
4  plaintiffs, for a total of $1,750; (2) a payment to each class
5  member depending on how long he or she was excluded from
6  Roseville parks; (3) a supplemental payment to each class member
7  who claims loss of property, depending on the lost property's
8  value; and (4) a "reasonable amount of fees and costs incurred
9  by class counsel to handle the claims administration." (See
10 Docket No. 40-2 Ex. C at ¶¶ 43-44.)

11       Payments to class members based on exclusion range
12 between "$50 for a one-day exclusion; $300 for a thirty-day
13 exclusion; $500 for a ninety-day exclusion; and $1,000 for a one-
14 year exclusion." (Id. ¶ 43.) Payments to class members based on
15 lost property range between "$150 for a minimal loss for such
16 things as bedding and/or tents; $500 for a moderate loss for such
17 things as back packs, clothes, person items cooking gear [sic],
18 tarps, and incidentals; and $1,500 for a great loss such as
19 bicycles, campers, wheel chairs, cell phones, important
20 mementoes, electronics, and/or things of special value." (Id. ¶
21 44.)

22       The parties have agreed that class members will receive
23 a total of $34,100 for both loss of property and park exclusions.
24 (Docket No. 49 at 2.) The parties have documented all accepted
25 and partially accepted claims and have listed amounts for each.
26 (Id. Ex. A at 5-8.)

27       Plaintiffs faced numerous hurdles in the litigation,
28 including proving all elements of the claims, obtaining and

10

1   maintaining class certification, establishing liability, and the
2   costliness of litigation on these issues.  Among other things,
3   after the Supreme Court decided City of Grants Pass v. Johnson,
4   603 U.S. 520 (2024), the strength of plaintiffs' position came
5   into question.  In Grants Pass, the Court held that a state or
6   local government may criminalize "camping . . . for the purpose
7   of maintaining a temporary place to live" without violating the
8   Eighth Amendment's prohibition against cruel and unusual
9   punishment.  603 U.S. at 537-38, 560-61.
10           The parties appeared to read Grants Pass to have
11  weakened plaintiffs' federal constitutional claims.  Thus,
12  plaintiffs' counsel represents that the settlement and resulting
13  distribution "potentially benefits a substantial number of
14  persons who, were it not for the settlement, would likely have
15  received no compensation whatsoever."  (See Docket No. 40-2 at
16  ¶ 8.)
17           In light of the risks associated with further
18  litigation and the relative strength of defendant's arguments,
19  the court finds that the value of the settlement counsels in
20  favor of granting final approval.  The court further finds the
21  method of processing class member claims to be adequate.  Each
22  class member's individual share of the settlement is
23  proportional to the amount of time excluded from Roseville parks
24  and property lost in connection with such exclusion.  The court
25  is also satisfied that counsel's requested fees of $162,500 are
26  reasonable and support approval of the settlement, which it will
27  address in greater detail below.
28       D.  Equitable Treatment of Class Members

11

Finally, the court must consider whether the Settlement Agreement "treats class members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). In doing so, the court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." Hudson, 2020 WL 2467060, at *9 (quoting Tableware, 484 F. Supp. at 1079).

Here, the Settlement Agreement does not improperly discriminate between any segments of the class, as all class members are entitled to monetary relief based on the amount of time excluded from Roseville parks and property lost in connection with such exclusion.

E.  Remaining *Hanlon* Factors

In addition to the factors already considered as part of the court's analysis under Rule 23(e)(A)-(D), the court must also examine "the extent of the discovery completed . . ., the presence of government participation, and the reaction of class members to the proposed settlement." Hanlon, 150 F.3d at 1026.

As explained above, counsel engaged in thorough informal discovery. This factor thus weighs in favor of final approval of the settlement.

The seventh Hanlon factor, pertaining to government participation, also weighs in favor of approval. See Hanlon, 150 F.3d at 1026. Defendant City of Roseville is a local government authority and has agreed to the terms of the Settlement Agreement. See Garcia v. City of King City, No. 14-cv-01126-BLF 2017 WL 2017 WL 363257 at *8 (N.D. Cal. Jan. 25, 2017) (finding this factor satisfied because the defendant city approved the

12

settlement agreement).

The eighth Hanlon factor, the reaction of the class members to the proposed settlement, also weighs in favor of final approval, as none of the class members have objected or opted out. See Hanlon, 150 F.3d at 1026.

In sum, the four factors that the court must evaluate under Rule 23(e) and the eight Hanlon factors, taken as a whole, weigh in favor of approving the settlement. The court will therefore grant final approval of the Settlement Agreement.

III. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The court assesses whether the requested fee award is reasonable under the lodestar method by multiplying a reasonable hourly rate by the number of hours counsel reasonably expended. See In re Bluetooth Headset, 654 F.3d at 941-42. As part of this lodestar calculation, the court may consider factors such as the

13

1  "level of success" or "results obtained" by plaintiffs' counsel.
2  See id.
3         To determine whether counsel has employed a "reasonable
4  hourly rate" for purposes of calculating the lodestar amount, the
5  court must look to the "prevailing market rates in the relevant
6  community." Gonzalez v. City of Maywood, 729 F.3d 1196, 1206
7  (9th Cir. 2013) (quoting Blum v. Stenson, 465 886, 895 (9th Cir.
8  2001)). "Generally, when determining a reasonable hourly rate,
9  the relevant community is the forum in which the district court
10 sits." Id. (internal quotation marks omitted) (quoting Prison
11 Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir.2010)).
12 Within this geographic community, the district court should
13 "tak[e] into consideration the experience, skill, and reputation
14 of the attorney [or paralegal]." Dang v. Cross, 422 F.3d 800,
15 813 (9th Cir. 2005) (internal quotation marks omitted).
16        Counsel represents that they have dedicated a total of
17 382.8 hours of work to this case; they have submitted billing
18 records to confirm this number. (See Docket No. 45-2 at 7;
19 Docket No. 45-3 at 6.) Counsel states their hourly rate in class
20 actions is $500 and that they have previously been awarded fees
21 at that amount in this district. (See Docket No. 45-2 at 2;
22 Docket No. 45-3 at 6.) Counsel further states they are
23 recognized as one of the most experienced and successful civil
24 rights litigators in the Sacramento area, and as possessing
25 unique qualifications to pursue cases of this kind. (See Docket
26 No. 45-2 at 2.) Counsel finally provides instances of other
27 attorneys with less experience obtaining awards in excess of a
28 $500 hourly rate in this district. (See id.) The court is

satisfied that counsel has offered sufficient evidence of a reasonable rate. See Final Order and Judgment, Baker v. Regents of the Univ. of Cal., No. 2:12-cv-00450-JAM-EFB (E.D. Cal. Jan. 9, 2013), ECF No. 54 (awarding a comparable hourly rate to counsel).

Based on 382.8 hours billed at an hourly rate of $500, the lodestar figure is $191,400. Counsel requests an amount lower than the lodestar at $162,500, with $122,500 to be paid to Mark E. Merin and $40,000 to be paid to Paul W. Comiskey. While that amount remains well in excess of the settlement, the Ninth Circuit has held that "it is not per se unreasonable for the prevailing party in a civil rights case to be awarded an amount of attorney's fees that exceeds the amount of money recovered by his or her client." Gonzalez, 729 F.3d at 1200. Following the lodestar calculation, the important factor in determining reasonableness is "the results obtained." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)) (internal quotation marks omitted).

Plaintiffs have obtained considerable non-monetary results for the class members in this litigation. The City's exclusion policy has been narrowed and relaxed, the policy for property seizure has been modified with tag and notice provisions, the City has agreed to provide due process with appeals for those excluded in the future, and the City has affirmed they will not enforce camping prohibitions during specified daytime hours. (See Docket No. 45-1 at 11.) These results align with the sorts of positive outcomes in civil rights cases for "the named plaintiff and for society at large" which

can justify higher attorneys' fees awards. Gonzalez, 729 F.3d at 1210 (citing Blanchard v. Bergeron, 489 U.S. 87, 96 (1989)) (internal quotation marks omitted).

Accordingly, the court finds the requested fees to be reasonable and will grant counsel's motion for attorneys' fees.

IV. Costs

Counsel's litigation expenses and costs total $644.28. (See Docket No. 45-2 at 6.) These expenses include a case filing fee, service of process, and photocopying fees. (See id.) The court finds these are reasonable litigation expenses. Therefore, the court will grant class counsel's request for costs in the amount of $644.28.

V. Representative Service Award

"Incentive awards are fairly typical in class action cases." Rodriguez, 563 F.3d at 958. "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." Id. at 958-59.

Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). In assessing the reasonableness of incentive payments, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327

F.3d at 977 (citation omitted).  The court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  Id.

In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable.  Davis v. Brown Shoe Co., Inc., No. 1:13-cv-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015) (citing Harris v. Vector Marketing Corp., No. 08-cv-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases)).

Plaintiffs seek $250 incentive awards for the seven named plaintiffs, totaling $1,750.  (See Docket No. 45-1 at 10.)  Plaintiffs identify specific efforts undertaken by named plaintiffs in this litigation, including origination of the lawsuit, involvement in negotiation, communication with class members, provision of declarations, and solicitation of class participation.  (See Docket No. 45-3 at 2-4.)  This is sufficient evidence of named plaintiffs' efforts toward receiving incentive awards, and thus the court finds the incentive awards do not create a conflict interest.  In light of plaintiffs' efforts and the risks incurred in bringing this action, the court finds the requested incentive awards to be reasonable and will approve the awards.

VI.  Conclusion

Based on the foregoing, the court will grant final certification of the settlement class and will approve the settlement set forth in the Settlement Agreement as fair, reasonable, and adequate.  The Settlement Agreement shall be

17

binding upon all participating class members who did not exclude themselves.

IT IS THEREFORE ORDERED that plaintiffs' unopposed motion for final approval of the parties' class action settlement (Docket No. 45) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) Solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class: all homeless persons who were excluded from a City of Roseville park facility pursuant to Roseville Municipal code section 8.02.316, but not arrested at the time, within two years before September 20, 2022;

(2) The court appoints named plaintiffs Marcus Hill-Colbert, Jennifer Timmons, Herminio LeBron, Daniel Reed, Vincent Barnao, Erin McMarlin, and James Thompson as class representatives and finds that they meet the requirements of Rule 23;

(3) The court appoints Mark E. Merin, Paul H. Masuhara, and Paul W. Comiskey to serve as class counsel for settlement purposes only;

(4) The settlement agreement's plan for class notice satisfies the requirements of due process and Rule 23.  The plan is approved and adopted.  The notice to the class complies with Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

(5) The court finds that the parties and their counsel took appropriate efforts to locate and inform all class members of the settlement.  Given that no class member filed an objection to the settlement, the court finds that no additional notice to

```
 1  the class is necessary;
 2          (6) As of the date of the entry of this order,
 3  plaintiffs and all class members who have not timely opted out of
 4  this settlement hereby do and shall be deemed to have fully,
 5  finally, and forever released, settled, compromised,
 6  relinquished, and discharged defendants of and from any and all
 7  settled claims, pursuant to the release provisions stated in the
 8  parties' settlement agreement;
 9          (7) Plaintiffs' counsel is entitled to fees in the
10  amount of $162,500, with $122,500 to be paid to Mark E. Merin and
11  $40,000 to be paid to Paul W. Comisky, and litigation costs in
12  the amount of $644.28;
13          (8)  Plaintiffs Marcus Hill-Colbert, Jennifer Timmons,
14  Herminio LeBron, Daniel Reed, Vincent Barnao, Eric McMarlin, and
15  James Thompson are entitled to incentive awards in the amount of
16  $250;
17          (9) $34,100 shall be paid to participating class
18  members for loss of property and park exclusion, in accordance
19  with the parties' stipulated terms (Docket No. 49.) and;
20          (12) This action is dismissed with prejudice.  However,
21  without affecting the finality of this Order, the court shall
22  retain continuing jurisdiction over the interpretation,
23  implementation, and enforcement of the Settlement Agreement with
24  respect to all parties to this action and their counsel of
25  record.
26  Dated:  September 15, 2025        [signature]
                                      WILLIAM B. SHUBB
27                                    UNITED STATES DISTRICT JUDGE
28
```